## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER a/s/o SUSAN S.; MONTVALE HEALTH ASSOCIATES a/s/o SUSAN S; IN-BALANCE HEALTH, LLC a/s/o SUSAN S. <br><br> Plaintiffs, <br><br> v. <br><br> AETNA INSURANCE COMPANY, INC., KPMG, LLC, ABC CORP. (1-10)(said names being fictitious and unknown entities) <br><br> Defendant/Counterclaim Plaintiff, <br><br> v. <br><br> MONTVALE SURGICAL CENTER, <br><br> Counterclaim Defendant. | Civil Action No. 12-2935 (KM/MCA) <br><br><br> Lead Case <br> Consolidated With: <br><br> Civil Action No. 12-3676 (SRC/CLW) <br> Civil Action No. 12-3684 (DRD/PS) <br> Civil Action No. 12-3687 (KM/MCA) <br> Civil Action No. 12-3690 (ES/SCM) <br> Civil Action No. 12-3733 (CCC/JAD) <br> Civil Action No. 12-3773 (CCC/JAD) <br> Civil Action No. 12-4285 (KSH/PS) <br> Civil Action No. 12-4286 (KM/MAH) |

## AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF AETNA HEALTH, INC. AND AETNA LIFE INSURANCE COMPANY TO THE COMPLAINT OF MONTVALE SURGICAL CENTER

Defendants Aetna Health Inc., and Aetna Life Insurance Company (improperly pleaded in the Complaint as Aetna Insurance Company), hereby incorporate their Answer and Affirmative Defenses to Plaintiffs' Complaint (Docket Entry 3) as if fully set forth herein.

2863558-01

## COUNTERCLAIM

Aetna Health, Inc. and Aetna Life Insurance Company, Inc. (collectively, "Aetna"), by and through their undersigned counsel, files the following Counterclaim against Montvale Surgical Center (hereinafter "MSC") and asserts the following:

## I.    INTRODUCTION

1.    Aetna brings this action to recover damages for injuries suffered as a result of MSCs' unlawful conduct and for declaratory and injunctive relief under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et. seq. ("ERISA") and the Federal Declaratory Judgment Act in its own capacity and as an administrator for certain self-funded health benefit plans.  This relief is sought against MSC who, pursuant to alleged assignments of ERISA plan benefits from plan beneficiaries have sought health care benefits under the plans.

2.    Aetna also brings separate and independent claims against MSC under state law for damages and treble damages based upon fraudulent and excessive billing, which gives Aetna a right to seek repayment and damages arising out of legal duties that MSC owes to Aetna separate and apart from any ERISA plan.  As set forth below, MSC regularly submitted false and fraudulent health insurance claims to Aetna which misrepresent and inflate the actual charges for out-of-network services to its patients and which the patient never agreed to pay.

3.    Physicians, including those with a financial interest in MSC, refer patients covered by Aetna health care plans to MSC even though it is a "non-participating" center.  Upon information and belief, MSC and the physicians encourage patients to use MSC rather than a participating center and assure the patients that they will not be liable for any charges associated with the inappropriately charged out-of-network costs.

2

2863558-01

4.     Upon information and belief, MSC refers the patients without informing them of its charges for services, obligations the patient will face, and fails to disclose the economic interest and potential gain that the facility will obtain from the patient's out-of-network referral.

5.     After admission, MSC submits excessive fees for reimbursement to Aetna for inflated charges that the patient did not agree to pay and is not responsible to pay.

6.     From January 1, 2009 through March 23, 2012, MSC billed Aetna over $4.9 million in charges that the patient did not agree to pay and was not responsible to pay. For example, between January 22, 2009 and January 24, 2009 MSC billed Aetna $198,000 for services rendered to only two (2) patients. On June 14, 2010, MSC billed Aetna in excess of $89,000 and was reimbursed over $76,000. These exorbitant charges were only for the use of MSC as a facility and were separate and apart from any "professional fee" charged by the practitioners rendering the service.

7.     In addition to its submission of false and inflated charges for its services, MSC routinely submitted claims for service known as "manipulations      under      anesthesia" that it knew was not necessary for the treatment of the patient.

8.     Aetna seeks declaratory and injunctive relief to remedy the unlawful practices of MSC. Aetna further seeks to determine Aetna and the plans' payment obligations based upon MSC's billing schemes and further seeks other relief with respect to MSC's various violations of state laws.

## II.     THE PARTIES

9.     Defendant and Counterclaimant Plaintiff Aetna is a corporation organized under the laws of the State of Connecticut with its principle place of business in the State of Connecticut.

2863558-01

10.    Plaintiff and Counterclaimant Defendant Montvale Surgical Center, LLC ("MSC") is a New Jersey limited liability company with its principle place of business at 6 Chestnut Ridge Road, Montvale, NJ 07645.

11.    At all material times hereto, MSC operated as a licensed ambulatory surgical center providing health care services to Aetna subscribers, located at 6 Chestnut Ridge Road, Montvale, NJ 07645.

## III.    JURISDICTION AND VENUE

12.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331, because Aetna brought a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq., which falls within the exclusive jurisdiction of this Court.

13.    Venue in the United States District for the District of New Jersey is proper pursuant to 28 U.S.C. §1391(b), because MSC resides in this District and because a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV.    FACTUAL BACKGROUND

### A.    The Health Benefits and Insurance Provided by Aetna

14.    Aetna provides health care insurance and benefits to beneficiaries pursuant to a variety of health care benefit plans and policies of insurance, including individual health benefit plans, employer-sponsored benefit plans and government-sponsored benefit plans. Aetna's benefit plans provide covered benefits for in-network services rendered by participating providers who have contracted with Aetna and for out-of-network services rendered by non-participating providers who have not contracted with Aetna.

4

### 1.  In-Network Benefits

15.  Aetna provides in-network health care benefits to its subscribers through a network of "participating" medical providers who have entered into contracts with Aetna to render services to subscribers in return for fees set by the terms of the contract.

16.  Medical providers who enter into contracts with Aetna are commonly known as "participating" providers, and the contracts between Aetna and participating providers require the participating provider to accept negotiated payment for services as payment in full and prohibit the provider from seeking additional payments from the patient. The subscriber ordinarily has no financial obligation to the participating provider beyond a small, fixed copayment and the participating provider is contractually prohibited from billing the subscriber for any other amounts, except under limited circumstances.

17.  The agreements between Aetna and its participating providers allow Aetna to deliver health care benefits efficiently through its provider network, to anticipate and control the cost of care, to reduce its financial risk for insured plans, to reduce the financial risk faced by subscribers for health care services, and to promote the quality of care through its credentialing and peer review processes.

18.  Beneficiaries have ready access to participating providers. Aetna publishes directories of participating providers to its subscribers who consume health care services in New Jersey.  Subscribers may obtain medical services from these providers with little or no financial risk or out-of-pocket expense.

### 2.  Out-of-Network Benefits

19.  Aetna provides health benefit plans and policies of insurance that provide "out-of-network" benefits for services rendered by "non-participating" providers who have not entered

2863558-01

into contracts with Aetna and have not agreed to accept negotiated payments as payment in full for services rendered.

20.     Non-participating providers set their own fees for services rendered to their patients subject to the laws and regulations which govern the practice of medicine in New Jersey.

21.     Aetna health benefit plans and policies of insurance that cover services by non-participating providers may limit the benefits available for out-of-network services.

22.     Pursuant to the terms of the benefit plans and policies of insurance, Aetna reimburses only a portion of the allowed charges for out-of-network services and the subscriber is responsible for payment of charges which are not covered by the plan or exceed the amount of the reimbursement paid by Aetna.

23.     Aetna health benefit plans generally require Aetna subscribers to pay deductibles and a portion of each medical bill, known as coinsurance or copayments (collectively, these member payments are known as and referred to herein as "patient responsibility").

24.     Each of Aetna's plans contains a provision indicating that coverage is excluded for those charges that a covered person is not legally obliged to pay and for services rendered only because there is health coverage.  In order for a service to be covered, and a resulting obligation created to pay by the plans, a health care provider must create a legal obligation in the subscriber to pay.

25.     The provisions of the plans and policies that require the covered person to pay coinsurance, deductibles and other amounts are material to the terms of the benefit plans and policies of insurance provided by Aetna.

26.     Among other things, the provisions of the plans and policies that require the covered person to pay coinsurance, deductibles and other amounts to non-participating providers

6

protect the integrity of Aetna's network of medical providers, require subscribers to consider and share in the cost of health care services, affect Aetna's ability to control the costs of the medical care, and encourage participation in its network of health care providers.

### B.    Montvale Surgical Center's Billing Practices

27.    MSC is an out-of-network provider that provided services to participants enrolled in employee health benefit plans administered and/or underwritten by Aetna and submitted claims for said services.

28.    Upon information and belief, MSC fails to disclose its charges or obtain any agreement with the patient to pay its claims. Moreover, at the time it provides services and submits claims, MSC does not intend to bill or collect from the patient the false and inflated charges submitted to Aetna.

29.    Upon information and belief, from January 1, 2009 up to and including March 23, 2012, MSC relieved all Aetna subscribers of any legal obligation to pay the required out-of-network deductibles, co-insurance and co-payment set forth in the plans, or to pay any amount by which its bill exceeded the reimbursement paid by Aetna.

30.    Between approximately January 1, 2009 and March 23, 2012, MSC submitted approximately 923 claims to Aetna as an assignee of patients' rights under the health benefits plans administered and/or underwritten by Aetna (the "Plans"). These claims totaled over $4.9 million. Aetna has paid MSC approximately $3,107,292.10 on those claims.

31.    MSC waived patient responsibility to induce patients to use its services, to induce providers to refer patients to its facility, to circumvent the terms and conditions of the Plans and policies of insurance provided by Aetna, and to submit claims for excessive fees and charges.

2863558-01

32.     When patient responsibility is waived and the waiver is not disclosed to Aetna, the patient is not legally obliged for the charges, the true amount of the provider's bill is misrepresented and these charges are excluded from coverage under the language contained in Aetna health benefit plan.

33.     Upon information and belief, in addition to and as a result of its waiver of patient responsibility and failure to disclose and/or contract with the patient, MSC submitted health insurance claims for excessive, unreasonable, and unlawful fees.

34.     MSC sought and received millions of dollars in exorbitant fees from Aetna, charging fees far higher than reasonable charges for the same services in the relevant market. Simply put, MSC is engaged in a scheme to gouge the health care system, Aetna, and its subscribers out of millions of dollars.

35.     The scheme (sometimes referred to as an "out-of-network strategy") is implemented when an ambulatory surgery center or other purportedly specialized facility, like MSC, targets and siphons off high-value patients from in-network, full-service hospitals.  The target patients include those whose health benefit plans and policies of insurance provide ready access to out-of-network benefits for services rendered by non-participating providers such as MSC.

36.     Upon information and belief, in order to encourage patients to use MSC, patients were assured that they would not be responsible for their required co-insurance and deductibles. After the patients' admissions, MSC submits exorbitant fee requests to Aetna which it would not be able to submit if it were an "in-network" provider.

37.     MSC's billed charges for some procedures are, in some cases, as much as forty-eight (48) times higher than the Medicare Allowance for ambulatory surgical centers for the

calendar year 2012. As examples, MSC has charged as much as $14,490 for services that are reimbursed by Medicare at $300.76. The disparity of fees can be even more excessive when compared to the discounted rates charged for the same services by an in-network hospital or similar medical provider.

38.     In addition to its submission of false and inflated charges for its services, MSC routinely submitted claim for procedures known as "manipulations under anesthesia" which MSC knew was not necessary for the treatment of the patients.

### C.     Damages and Irreparable Harm

39.     MSC's fraudulent billing practices, misrepresentation of amounts billed and waiver of patient responsibility has damaged Aetna and caused it irreparable harm.

40.     MSC's unlawful waiver of coinsurance, deductibles and other patient responsibility for services rendered by it has irreparably harmed Aetna by, among other things, hindering its ability to determine and control the costs of medical services provided to covered individuals.

41.     MSC's unlawful waiver of coinsurance, deductibles and other patient responsibility for services rendered by it has irreparably harmed Aetna by diverting patients to a non-participating facility, eroding Aetna's provider network and by interfering with its benefit plans.

42.     In light of MSC's unlawful waiver of coinsurance, deductibles and other patient responsibility, as well as submission of charges for which the patient was not legally obliged to pay, any funds by Aetna for such claims were paid erroneously and/or induced by MSC's fraudulent and unlawful billing practices.

43.     MSC's excessive and unreasonable billing for services rendered harmed Aetna due to its reasonable reliance on the claims submitted and payment of the excessive rates.

## COUNT I

### 29 U.S.C. § 1132(a)(3)

44.     Aetna has paid MSC $3,107,292.10 for claims submitted between January 1, 2009 and March 23, 2012.   Most, if not all, of those payments were related to charges that the participants were not obligated to pay, were not billed, and/or would not have been billed except that they were covered under the Plans.

45.     Aetna's payments to MSC of approximately $3,107,292.10 constitute overpayments that Aetna has the right to recover pursuant to its plans.

46.     Aetna is entitled to equitable relief pursuant to 29 U.S.C. § 1132(a)(3) to enforce the terms of the Plans and recover the overpayments.

47.     Aetna is entitled to recover its costs and reasonable attorneys' fees in maintaining this action under the terms of ERISA and/or the Plans.

WHEREFORE, Aetna demands judgment against MSC for Ambulatory Surgery for damages in an amount greater than $75,000.00, together with punitive damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and all other such relief as the Court deems just and proper.

## COUNT II

### Declaratory and Injunctive Relief

48.     Aetna repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 47 of its Complaint.

10

2863558-01

49.    From at least 2009 through the present, MSC's waiver of coinsurance, deductibles and other patient responsibility renders the services ineligible for reimbursement under the Plans provided by Aetna, violates the terms of the Plans and tortiously interferes with the Plans provided by Aetna.

50.    From at least 2009 through the present, MSC has charged excessive and unreasonable amounts for services rendered in addition to materially misrepresenting the charge for the services provided.

51.    As a result of Plaintiff's waiver of coinsurance, deductibles and other patient responsibility in addition to its excessive and unreasonable billing, Aetna has suffered, and will continue to suffer damages and irreparable harm.

**WHEREFORE**, Aetna demands judgment against MSC for Ambulatory Surgery for declaratory and injunctive relief prohibiting MSC for Ambulatory Surgery from continuing its practice of submitting unreasonable and excessive claims for payment for services rendered and from waiving patient responsibility for services rendered.

## COUNT III

### Insurance Fraud

52.    Aetna repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 51 of the Complaint.

53.    Since at least as early as 2009, MSC entered in to a scheme to defraud Aetna through the submission of a pattern of false, misleading and fraudulent insurance claims in violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq. (IFPA).

2863558-01

54.    At all times material hereto, Aetna was an insurance company within the meaning of the IFPA and paid insurance claims in reasonable reliance on the false, misleading and incomplete claims submitted by MSC.

55.    At all material times hereto, MSC was a person or practitioner within the meaning of the IFPA.

56.    In violation of the Act, MSC knowingly submitted written bills, statements and health insurance claims for services knowing that the bills, statements and claim forms contained false and misleading information material to the claim.   In addition, MSC concealed and knowing failed to disclose material events, occurrences and other information which affected their right to payment in violation of the Act.

57.    In submitting insurance claims for payment to Aetna, MSC used standard claim forms or electronic submissions.

58.    For each claim submitted, MSC expressly represented that the information and statements contained in the claims submitted were true, correct and complete; and that the amounts billed were actually incurred by the patient.

59.    In submitting insurance claim forms to Aetna for payment, MSC acted knowingly and intended that Aetna rely on the information contained in the false insurance claim forms in issuing payment on the claims.

60.    Since at least as early as 2009, MSC knowingly submitted health insurance claims to Aetna which misrepresented the amounts charged to patients for service and sough to recover amounts for which they had no agreement or legal basis to charge.

12

61.     Since at least as early as 2009, MSC knowingly failed to disclose that the amount stated on their claims did not represent the actual charge for services and that the patient did not agree to any such charge.

62.     The information concealed and not disclosed by MSC was material to the claims submitted, affected the right to payment of the claims, and if disclosed, would have caused Aetna to deny payment for the claims.

63.     In reasonable reliance on the claims submitted by MSC, Aetna paid in excess of $3,107,292.10 in excessive and unlawful charges by MSC.

64.     As a result of MSC's scheme to defraud and pattern f violations of the IFPA, Aetna has suffered damages including, but not limited to, all amounts paid for false and fraudulent claim forms submitted MSC, the costs of investigation, counsel fees and other losses.

65.     Pursuant to N.J.S.A. 17:33A-7, Aetna is entitled to all compensatory damages, including but not limited to all amounts paid on false or incomplete claims, its costs of suit and attorneys fees, and is entitled to recover treble damages because MSC engaged in a pattern of violation of the Act.

## COUNT III

### Fraud

66.     Aetna repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 65 of its Complaint.

67.     MSC entered into a scheme to defraud Aetna through a pattern of false and misleading activities for the purpose of causing Aetna to reimburse them for charges greatly in excess of the usual, customary and reasonable billed charges for the same services in New Jersey.

2863558-01

68.    As part of the scheme, MSC encouraged physicians to refer patients to it for out-of-network medical services, which services it would in turn bill at rates substantially in excess of the usual, customary and reasonable charges for the same services in the relevant market.

69.    MSC made false and misleading statements and representations for the purpose of recovering reimbursement from Aetna for charges that were substantially in excess of the usual, customary and reasonable charges for such services, and thus were manifestly unconscionable and overreaching.  Nothing in the nature and circumstances of the services rendered by MSC justifies the excessive charges billed to Aetna.

70.    MSC calculated that by reason of the manner in which they sought reimbursement and for other reasons, at least some of the overcharges would not be discovered by Aetna, thereby resulting in a windfall to MSC.

71.    In seeking reimbursement for excessive charges, MSC did not disclose waivers, reassurances or other promises made to induce patients to use MSC including, upon information and belief, reassurances that the patients would not pay any more for co-insurance, deductibles or other patient-responsibility charges than they would at an in-network facility.  MSC misrepresented its charges because the reimbursement sought was not for the amount that the patient actually agreed to pay, but for an inflated amount.

72.    In reasonable reliance on the false and misleading submission of claims, Aetna was damaged in an amount to be determined at trial.

**WHEREFORE**, Aetna demands judgment against MSC for Ambulatory Surgery for damages in an amount greater than $75,000.00, together with punitive damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and all other such relief as the Court deems just and proper.

2863558-01

## COUNT IV

### Unjust Enrichment

73.     Aetna repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 72 of its Complaint.

74.     MSC's actions have resulted in an economic benefit being conferred upon it to which it is not entitled.

75.     Specifically, MSC has received payment from Aetna for claims that were not covered under the terms of the Plans.

76.     To permit MSC to retain that economic benefit would result in an unjust enrichment at Aetna's expense and detriment.

77.     As a direct and proximate result of MSC's conduct, it has been unjustly enriched and Aetna has suffered damages in an amount in excess of $75,000.00, subject to proof at trial.

**WHEREFORE**, Aetna demands judgment against MSC for Ambulatory Surgery for damages in an amount greater than $75,000.00, together with pre- and post-judgment interest, attorneys' fees, costs of suit, and all other such relief as the Court deems just and proper.

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Road, Ste. 230
Cherry Hill, NJ 08002
(856) 317-7100

*Attorneys for Defendants Aetna Health, Inc.*
*and Aetna Life Insurance Company*

BY:     */s/Edward S. Wardell*
          Edward S. Wardell, Esquire
          Matthew A. Baker, Esquire

DATED: March 1, 2013

15

2863558-01

## CERTIFICATE OF SERVICE

I, Edward S. Wardell, hereby certify that, on the date set forth below, I caused a true and correct copy of the within pleading on behalf of Defendant Aetna Life Insurance Company (improperly pled as "Aetna Insurance Company, Inc.") (hereinafter "Aetna") to be electronically filed with the Court in accordance with the electronic filing procedures:

I further certify that, on the date set forth below, I caused a true and correct copy of the within pleading to be served via ECF and e-mail on all counsel of record.

Andrew Bronsnick, Esquire
Massood & Bronsnick
50 Packanack Lake Road East
Wayne, NJ 07470
*Attorneys for Plaintiffs*

I certify under penalty of perjury that the foregoing is true and correct.

Dated: March 1, 2013

s/ *Edward S. Wardell*
Edward S. Wardell

16

2863558-01